56258-33-61

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NCMIC INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  08 C 885 |
| | ) | Judge Conlon |
| BRADLEY HAYASHI, HANOVER PARK | ) | Magistrate Judge Cox |
| PHYSICAL MEDICINE & REHABILITATION, | ) | |
| LTD., and MELINA KELLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

Now comes Plaintiff, NCMIC Insurance Company (hereinafter "NCMIC"), through

its attorneys, Richard M. Clark and Kristin D. Tauras, and for its Memorandum of Law in

Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure and LR56.1 of the Rules of the United States District Court for the

Northern District, states as follows:

## INTRODUCTION

This case seeks a declaratory judgment that NCMIC does not owe coverage in a

tort action arising out of the criminal conduct of Dr. Hayashi, chiropractor, against his

patient, Ms. Melina Kelley.  Kelley alleged that Hayashi sexually assaulted her.  Hayashi

was later convicted of battery, 720 ILCS 5/2-3(a)2.  Kelley then filed a lawsuit against

Hayashi and Hanover Park Physical Medicine & Rehabilitation (hereinafter "Hanover

Park"), alleging battery and violation of the Illinois Gender Violence Act.

NCMIC insured Hayashi under a professional liability policy, Policy Number

1

MP00906897, (hereinafter "Policy"). Hayashi tendered the defense of the Underlying

Complaint to NCMIC.  NCMIC rejected the tender and filed this declaratory judgment

action.  NCMIC seeks a declaratory judgment that NCMIC does not owe a duty to

defend or indemnify the Defendants.

## STATEMENT OF FACTS

### The Battery

Hayashi is a chiropractor.  (Plaintiff's Statement of Uncontested Facts, "PSUF,"

¶3) From 2004 to October 2006, Kelley was a patient of Hayashi. (PSUF ¶6) On

October 16, 2006, Kelley had an appointment to see Hayashi for chiropractic services

related to scoliosis, including massage, electrical stimulation and adjustments to her

spine.  (PSUF ¶7-8) At the beginning of the appointment, Hayashi asked Kelley to

disrobe for a full body massage.  (PSUF ¶17) During the massage and without her

consent, Hayashi touched her vagina, labia, clitoris, and breasts. (PSUF ¶18-19)

### The Conviction

Following the incident, Kelley reported the incident to the Hanover Police

Department.  (PSUF ¶10) On October 25, 2006, a criminal complaint was filed with the

Circuit Court of Cook County, Illinois against Hayashi, case number 06-3007145.

(PSUF ¶21)  The Criminal Complaint alleged that Hayashi committed battery in that he

"knowingly and without legal justification made physical contact of and insulting nature

with Melina Kelley in that he fondled Melina Kelley's breasts and vagina during a

chiropractic visit in violation of 720 ILCS 5/12-3(a)2." (PSUF ¶12, Ex.F)

Hayashi was arrested for criminal battery,720 ILCS 5/2-3(a)2, for his treatment of

Kelley on or about October 16, 2006. (PSUF ¶13)  During the trial, Kelley testified that
Hayashi touched her breasts and vaginal area without her consent. (PSUF ¶18-19)
Hayashi also testified and denied touching of her breasts or vaginal area. (PSUF ¶22)
Hayashi waived his right to a jury. (PSUF ¶23) At the conclusion of the evidence in the
criminal trial, Judge Hanlon stated that Kelley was credible and she did not "believe Dr.
Hayashi was credible" and that she "[did] not believe him when he [said] that this never
happened" and entered a finding of guilty.  (PSUF ¶24) On May 21, 2007 Hayashi was
found guilty of the crime of battery in violation of 720 ILCS 5/2-3(a)2 for the alleged
treatment and/or therapy provided to Kelley on October 16, 2006. (PSUF ¶25)

### The Lawsuit

On December 12, 2007, Kelley filed a Complaint against Hayashi and Hanover
Park, in the Circuit Court of Cook County, Illinois, Court Number 2007 L 13856
(hereinafter "Underlying Complaint.") (PSUF ¶26) The Underlying Complaint alleges
battery and violation of the Illinois Gender Violence Act. (Ex.H) The Underlying
Complaint does not seek recovery for professional negligence. (Ex.H) In the Underlying
Complaint, Kelley is seeking recovery for the same actions of Hayashi that form the
basis of the criminal complaint. (PSUF ¶32; Ex. H)

### The Policy

NCMIC issued a Professional Liability Policy for Chiropractic Malpractice to
Hayashi, with the effective dates of June 24, 2006 through June 24, 2007.  (PSUF ¶34)
NCMIC did not issue a Policy to Hanover Park.  (PSUF ¶35).  Nor is Hanover Park
listed as an additional insured on any Policy issued by NCMIC.  (PSUF ¶35)

3

The Policy in effect at the time of the alleged occurrence included the following

Coverage Agreement:

> We will pay on behalf of an insured all sums to which this insurance applies and for which an insured becomes legally obligated to pay as damages because of an injury. The injury must be caused by an accident arising from an incident during the policy period.

(Ex.I, p.3) "Persons Insured" under the policy are (1) the insured shown on the

Declarations and (2) assistants employed by the insured. (Ex. I, p.4) The Policy defined

"incident" as "...any negligent omission, act or error in the providing of professional

services..."(Ex. I, p.2 ) The Policy defined "professional services" as "...services which

are within the scope of practice of a chiropractor..." (Ex. I, p.2 )

The Policy also contained three relevant exclusions for any act that: (1) violated

a state statute governing the commission of a crime; (2) involved sexual impropriety,

sexual intimacy, sexual assault, sexual harassment or any other similarly defined act;

and (3) the intentional infliction of injury. (Ex. I, p.4-5)

Hayashi tendered defense of the Underlying Complaint to NCMIC. (PSUF ¶40)

NCMIC denied coverage. (PSUF ¶41)

## LAW

Under Illinois law, NCMIC does not owe a duty to defend or indemnify the

Defendants. A duty to defend exists only where the allegations of the complaint, when

compared to the terms of the insurance policy, potentially fall within the terms of the

policy. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 607 N.E.2d 1204,

1220-1221 (1992). A duty to indemnify exists only where the facts, as proven by the

underlying plaintiff, actually fall within the terms of the policy. *Id.*  The evidence from the criminal conviction of Hayashi is subject to collateral estoppel and warrants a determination of no duty to defend or indemnify. In addition, the allegations in the Underlying Complaint do not fall within the terms of the Coverage Agreement and are subject to the Exclusions for Criminal Acts, Sexual Acts, and Intentional Acts.

## I.   NCMIC DOES NOT OWE A DUTY TO DEFEND OR INDEMNIFY BASED ON THE RULE OF COLLATERAL ESTOPPEL.

The criminal conviction for battery collaterally estops Hayashi from asserting coverage in the Underlying Case.  The criminal conviction for battery conclusively establishes that (1) Hayashi's conduct was intentional and (2) Hayashi's conduct violated a statute criminal statute, both of which negate coverage.

Under the Coverage Agreement portion of the Policy, in order to be entitled to coverage, "the injury  must be caused by an *accident* arising from an incident ..." (Ex.I, p.3)    Under Illinois law, an accident must be an unforeseen occurrence; it does not include the natural and ordinary consequences of an act. *NCMIC Ins. Co. v. Johnson*, 2006 WL 1004862 (Ex. L), *citing Aetna Cas. & Sur. Co. v. Freyer*, 411 N.E.2d 1157, 1159 (1st Dist. 1980).  Criminal battery, by definition, is an intentional act.  Criminal battery occurs when a person "intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual."  720 ILCS 5/12-3(a)2.

Under the Exclusions portion of the Policy, claims arising out of an act violating any state statute governing the commission of a crime and claims arising out of intentional acts are barred from coverage.  Again, there can be no dispute that the

battery conviction was an intentional act or that battery violates a statute governing the commission of a crime.    Both the Coverage Agreement and Exclusions provide independent bases for denying coverage.

In *American Family v. Savickas*, 193 Ill.2d 378, 387, 739 N.E.2d 445 (2000), the Illinois Supreme Court held that estoppel may be applied to a prior criminal conviction in an appropriate case. The Court set forth three threshold requirements, which must be met before the collateral estoppel doctrine will preclude a party from relitigating an issue decided by a prior proceeding: (1) the issue decided in the prior adjudication must be identical to the one presented in the lawsuit; (2) there must be a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted must be a party or in privity with a party to the prior adjudication. *Id.* at 387.  After the threshold requirements are met, a determination must be made regarding whether unfairness will result to the party being estopped – balancing the need to limit litigation against the right to an adversarial proceeding in which a party is accorded a full and fair opportunity to present his case. *Id.* at 388.  In making this determination, courts look to whether the party was given a full and fair opportunity to present his case and the party's incentive to litigate the issue in the prior litigation.  *Id.* at 388.

In *American Family*, the insurer brought a declaratory judgment action seeking a determination that it owed no duty to defend or indemnify a wrongful death action where the insured had been convicted of murder. The Court determined that the threshold requirements were met, that the defendant was afforded a fair and full opportunity to litigate the issues in the criminal case and that collateral estoppel should apply:

6

We find Savickas may be estopped with his murder
conviction. First, all of the threshold requirements are
satisfied. In Savickas' criminal prosecution he was held to
have committed first degree murder in shooting Thomas. By
finding him guilty of first degree murder the jury necessarily
found him either to have intended to kill the victim, or at least
to have known that his acts created a strong probability of
death or great bodily harm. This finding establishes that he
"intended or expected" the result of his actions, the issue in
the declaratory judgment action. There was a final judgment
on the merits in the criminal litigation, to which Savickas was
obviously a party. Savickas litigated the issue to a jury
verdict (and ensuing appeals) and a determination of his
mental state was necessary to his conviction.

Nor do we see any potential unfairness to Savickas in
estopping him with his criminal conviction. Savickas had a
full and fair opportunity to litigate all relevant issues in his
criminal trial, and did so.

*Id.* at 388-89 (citations omitted). The Illinois Supreme Court found that American

Family both had no duty to defend or  indemnify:

We find that American Family may collaterally estop
Savickas with his criminal conviction.  In the criminal
prosecution it was established that Savickas intended the
harm which is the subject of the underlying suit.
Accordingly, that harm falls within a policy exclusion, and
American Family has no duty to defend Savickas.  Because
American Family has no duty to defend, it also will have no
duty to indemnify Savickas against that judgment in the
underlying case.

*Id.* at 391. *See also American Co. Ins. Co. v. Williams*, 339 Ill.App.3d 835, 791 N.E.2d

1268 (1st Dist. 2003) (affirming a circuit court decision that a defendant was collaterally

estopped from relitigating a criminal conviction for battery in a declaratory judgment

action where the defendant had every incentive to litigate the criminal matter, which

carried a maximum of a one-year prison sentence, but remanding on other grounds.)

    In the present case, the threshold requirements are met. First, the issues

decided in the criminal adjudication are identical to the issues in question. In the criminal matter, Hayashi was charged and convicted of battery. Criminal battery occurs when a person "intentionally or knowingly without legal justification... (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a)2. In the Underlying Complaint, Kelley is seeking financial recovery for the criminal battery under theories of tortious battery and violation of the Gender Violence Act predicated on the criminal battery. Kelley admits in her Request to Admit that she is seeking monetary damages for the same actions that formed the criminal complaint she signed. (PSUF ¶ 32) Moreover, at least two of the specific issues voiding coverage having already been fully litigated in the criminal case: (1) by finding Hayashi guilty of battery, the Court necessarily found that Hayashi committed an intentional act, which is not insured by the Coverage Agreement as well as excluded from coverage under the Intentional Acts Exclusion and (2) the conviction for battery is necessarily a finding that Hayashi's conduct was in violation of a state criminal statute, which is excluded under the Criminal Act Exclusion. (Ex.I) Second, there was a final adjudication on the merits. Following a two-day trial, Hayashi was found guilty of the crime of battery, convicted and sentenced. Third, Hayashi, the party against whom estoppel is asserted, was both a party to the criminal case as well as a party in the Underlying Complaint.

Moreover, Hayashi not only had the opportunity to present his case, he did present a case. He did not enter into a plea bargain. Instead, he chose to go to trial. He was represented by counsel, presented several witnesses, waived his right against self-incrimination and testified on his own behalf. At the end of the bench trial, the Judge

determined that Kelley told the truth about the sexual assault and that Hayashi had lied, stating that she did not "believe Dr. Hayashi was credible" and "[did] not believe him when he [said] this never happened..."  (PSUF ¶24) There can be no unfairness to Hayashi in estopping him from relitigating the issues.

NCMIC is obviously mindful of the determination by the Southern District of Illinois in the case of *NCMIC v. Johnson*, 2006 WL 1004862 (Ex. L), which involved a similar policy and a similar underlying complaint. In that case, the District Court found no duty to defend, but reserved ruling on the issue of the duty to indemnify. The District Court never addressed the collateral estoppel issue.  Rather, the Court determined that it would be premature to rule on the issue of indemnity because the issues regarding coverage were intertwined with the issues in the underlying lawsuit. *Johnson, supra,* *3-4.  The *Johnson* facts are distinguishable on several important bases.

The *Johnson* case did not involve the same criminal adjudication that is at issue in this case.  In *Johnson*, the defendant pled guilty to misdemeanor battery. *Johnson, supra,*\*2.  It is unclear from the opinion why the defendant chose to plead guilty, whether it was part of a plea bargain for a reduced sentence or in anticipation of a lighter sentence. It is also unclear whether the District Court would have found that the plea of guilty provided the defendant a full and fair opportunity to litigate all relevant issues in his criminal trial.  In this case, there are none of those same concerns.  Here, the facts demonstrate that Hayashi was given a full and fair opportunity to defend his criminal case and was found guilty of battery.  In so doing, the issues of "intentional" conduct and whether the conduct violated a state criminal statute were fully litigated.

9

There are no facts left to litigate with respect to either of these issues.

Moreover, the *Johnson* opinion does not provide sufficient facts to determine if the same facts were being litigated in the civil case. In the present case, the criminal trial was transcribed and the Court has the opportunity to examine the facts in the criminal case and determine that collateral estoppel should be afforded.  Here, there is nothing left to be adjudicated.  By virtue of his criminal conviction, there already has been a judicial determination that Hayashi acted intentionally and that his conduct was a violation of an Illinois criminal statute. Accordingly, applying *American Family, supra,* this Court should find that NCMIC has no duty to defend nor indemnify Hayashi.

## II.    NCMIC DOES NOT OWE A DUTY TO DEFEND HAYASHI BASED ON THE ALLEGATIONS IN THE COMPLAINT.

As a separate basis for finding no duty to defend, the allegations in the Underlying Complaint do not fall within the Policy's coverage. An insurer does not have a duty to defend where it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.  *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 578 N.E.2d 926, 930 (1991). The allegations in the Underlying Complaint do not  fall within the Coverage Agreement.  Moreover, the Policy expressly excludes Hayashi's alleged conduct from coverage.   Each of the following provides an independent basis to find that there was no duty to defend.

## A.    NCMIC Does Not Owe A Duty To Defend Hayashi Under Its Coverage Agreement Because Hayashi Is Not Being Sued For An Accident.

The Policy provides coverage only for "accidents."  Under its Coverage

Agreement, the Policy provides that it will pay for injuries caused by an "accident." The Underlying Complaint does not allege an injury caused by an accident.

As stated above, an "accident" must be an unforeseen occurrence. *Johnson*, *supra,* 2006 WL 1004862; *Aetna Cas. & Sur. Co.*, *supra,* 411 N.E.2d 1157.   In *Johnson*, the district court addressed a similar complaint alleging battery in relation to a similar insurance policy.  The court held that the alleged battery did not qualify as an accident and determined that there was no duty to defend under the Coverage Agreement.  *Johnson, supra,* *6.

 Here, the Underlying Complaint alleges that Hayashi "sexually assaulted" Kelley "without her consent" and "against her will" under the pretense of  massage therapy and was convicted of battery for his actions.  (Ex. H, ¶25) Civil battery and violation of the Illinois Gender Violence Act predicated on the battery both have an intentional element. Battery is an intentional tort. *Walker v. Dominick's Finer Foods, Inc.*, 92 Ill.App.3d 645, 415 N.E.2d 1213 (1ˢᵗ Dist., 1980). Similarly, a person violates the Illinois Gender Violence Act when the person engages in acts of violence that satisfy the elements of "criminal battery", regardless of conviction.  Criminal battery occurs when a person "intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual."  720 ILCS 5/12-3(a)2. The conduct alleged in the Underlying Complaint is not accidental. Therefore, it does not fall under the Coverage Agreement.

**B.    NCMIC Does Not Owe A Duty To Defend Hayashi Under Its Coverage Agreement Because Hayashi Is Not Being Sued For An Incident.**

The Coverage Agreement also states that the alleged injury must be caused by

11

an accident arising from an "incident" during the policy period. The policy defines an "incident" as "...any negligent omission, act or error in the providing of **professional services**..."  "Professional Services" is further defined as "...services which are within the scope of practice of a chiropractor in the state in which the chiropractor is licensed." Illinois courts have often held that everything that happens in a medical professional's office does not qualify as professional services, especially when there are claims involving sexual or improper touching of patients. *Johnson*, *supra,* 2006 WL 1004862; see also *American Family Mut. Ins. Co. v. Enright*, 781 N.E.2d 394 (2d Dist. 2002). In order for conduct to be considered "professional services", and, therefore, within the scope of practice, the claim must involve specialized knowledge, labor or skill, predominantly mental or intellectual in nature.  See *Johnson, supra, *5; *American Family Mut. Ins. Co. v. Enright, 334* Ill.App.3d 1026.

Kelley is not suing Hayashi for negligence related to his professional services; she is suing for sexual assault. The Underlying Complaint states that Hayashi did not provide "appropriate or lawful chiropractic, physical or massage therapy" but "instead ....sexually assaulted plaintiff, by touching her ... without her consent and against her will..." (Ex.H, ¶ 24-25)  The allegations do not fall within the Coverage Agreement.

**C.    NCMIC Does Not Owe A Duty to Defend Hayashi Because Coverage Is Excluded Under Its Criminal Acts Exclusion.**

The Policy contains a Criminal Acts Exclusion. (Ex. I, p.4) The Criminal Acts Exclusion states that the policy does not apply to claims arising out of, based upon or attributable to an act violation "any federal or state.....governing the commission of a crime." Kelley alleges in the Underlying Complaint that Hayashi sexually assaulted her

without her consent, which by definition is a crime of battery. *See* 720 ILCS 52-3(a)2.

(Ex. H, ¶¶ 25, 37) As set forth in the Underlying Complaint, Hayashi was convicted of

battery for the same facts that form the basis for the Underlying Complaint. (Ex. H, ¶¶

25, 37, 47)  Therefore, this issue falls squarely within the Criminal Acts Exclusion. *See*

*also Allstate Ins. Co. v. Brown*, 16 F.3d 222, 225 (7th Cir.1994) ("[A]n act is criminal if it

violates the State's criminal code."); *See also Grinnell Mut. Reinsurance Co. v. Shierk*,

996 F.Supp. 836, 838 (S.D.Ill.,1998) (Applying a policy's criminal acts exclusion, the

district court held that there was no duty to defend or indemnify where the insured was

convicted of crime for the same conduct that formed the basis for the underlying suit.)

### D. NCMIC Does Not Owe A Duty to Defend Hayashi Because Coverage Is Excluded Under Its Sexual Acts Exclusion.

The Policy contains a Sexual Acts Exclusion. (Ex. I, p. 5) The Sexual Act

Exclusion states that the Policy does not apply to claims of "sexual impropriety, sexual

intimacy, sexual assault, sexual harassment or any other similarly defined act."  The

allegations in the Underlying Complaint relate to "sexual assault". Therefore, allegations

in the Complaint are excluded from coverage.  *See Illinois State Medical Ins. Services,*

*Inc. v. Cicho*, 258 Ill.App.3d 803, 629 N.E.2d 822 (3d Dist.,1994) (Physician's plea for

aggravated sexual assault was "sexual conduct" within meaning of a malpractice

policy's exclusion of coverage if liability arose out of any conduct of sexual nature.)

### E. NCMIC Does Not Owe A Duty to Defend Hayashi Because Coverage Is Excluded Under Its Intentional Acts Exclusion.

The Policy contains an Intentional Acts Exclusion.  (Ex. I, p. 5) The Intentional

Acts Exclusion states that the policy does not apply to the "intentional infliction of

injury." As addressed above, all allegations in the Underlying Complaint relate to the intentional acts of battery.  Therefore, the allegations are excluded from coverage. *See American Family, supra,* 193 Ill.2d 378 (applying an intentional acts exclusion to a murder conviction, where the jury necessarily found the defendant guilty of intending to kill or at least having known that his acts created the strong probability of great bodily harm.); *See also Scudder v. Hanover Ins. Co.,* 201 Ill.App.3d 921, 559 N.E.2d 559 (2d Dist.1990) (The court inferred as a matter of law that a sexual abuser intended to injure his victim and applied an intentional acts exclusion); *West Am. Ins. Co. v. Vago,* 197 Ill.App.3d 131, 553 N.E.2d 1181 (2d Dist.1990) (applying an intentional acts exclusion in a sexual assault case despite pleadings sounding in negligence.)

### III.    NCMIC DOES NOT OWE A DUTY TO DEFEND OR INDEMNIFY HANOVER PARK.

Hanover Park is not a "person insured" under the express terms of the policy. The Policy defines "person insured" as the named insured and chiropractic assistants or nurses working for the named insured. (Ex. I) Here, Hayashi is the only named insured. Defendants admit in answer to the Declaratory Judgment Complaint that Hanover Park is not a named insured on the Policy. (Ex. C,¶39) "A court may look beyond the allegations in the complaint only if the coverage issue involves such ancillary matters as whether the insured... is the proper insured under the policy." *Bituminous Cas. Corp. v. Fulkerson,* 212 Ill.App.3d 556, 562, 571 N.E.2d 256 (1991). Accordingly, NCMIC does not owe a duty to defend or indemnify Hanover Park.

In addition, for all the reasons set forth in Arguments I and II, NCMIC does not owe a duty to defend nor indemnify Hanover Park.

14

## IV.     KELLEY HAS NO RIGHTS OF INDEMNIFICATION AGAINST NCMIC.

If Kelley gets a judgment against Hayashi in the underlying case, then any rights Kelley could have to collect the judgment from NCMIC would be derivative. *American Family, supra,* 193 Ill.2d 378, 392.  Under Illinois law, she can have no greater rights than Hayashi. *Id.*   Accordingly, for all the reasons set forth above, Kelley is also precluded from asserting any indemnification rights against NCMIC.

Wherefore, Plaintiff, NCMIC Insurance Company, respectfully requests that this Court enter summary judgment in favor of the Plaintiff and against the Defendants, finding that NCMIC Insurance Company does not owe a duty to defend nor indemnify Defendants and for all further relief it is entitled in this proceeding.

Respectfully submitted,

NCMIC Insurance Company,

By:___ /s/ Kristin D. Tauras
        One of its attorneys

Richard M. Clark
ARDC: 00452823
rclark@mckenna-law.com
Kristin D. Tauras
ARDC:06216004
ktauras@mckenna-law.com
McKenna Storer
33 North LaSalle, Suite 1400
Chicago, Illinois 60602
(312) 558-3900

15

## CERTIFICATE OF SERVICE

       I hereby certify that on June 12, 2008, I electronically filed the foregoing with the Clerk of the U. S. District Court, for the Northern District of Illinois using the CM/CEF e-filing system which will send notification of such filing to the following e-mail addresses:

       Ms. Kaethe Morris Hoffer
       K. Morris Hoffer, P.C.
       1609 Sherman Avenue
       Evanston, IL 60201

       Michael Slovis
       Cunningham, Meyer & Vedrine
       111 West Washington, Suite 937
       Chicago, IL 60602

McKenna Storer

By: /s/ Kristin D. Tauras
Richard M. Clark
ARDC: 00452823
rclark@mckenna-law.com
Kristin D. Tauras
ARDC:06216004
ktauras@mckenna-law.com
McKenna Storer
33 North LaSalle, Suite 1400
Chicago, Illinois 60602
(312) 558-3900