KC

**FILED**

**FEBRUARY 11, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

56258-33-61

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**08 C 885**

| | |
|---|---|
| NCMIC INSURANCE COMPANY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. |
| | ) |
| BRADLEY HAYASHI, HANOVER PARK | ) |
| PHYSICAL MEDICINE & REHABILITATION, | ) |
| LTD., and MELINA KELLEY, | ) |
| | ) |
| Defendants. | ) |

**JUDGE CONLON
MAGISTRATE JUDGE COX**

**COMPLAINT FOR DECLARATORY JUDGMENT**

Now comes Plaintiff, NCMIC Insurance Company, for its Complaint for

Declaratory Judgment against Defendants, Bradley Hayashi, Hanover Park Physical

Medicine & Rehabilitation, Ltd. and Melina Kelley, and states as follows:

**ALLEGATIONS COMMON TO ALL COUNTS**

**JURISDICTION**

1.      The cause of action is brought pursuant to this Court's Diversity Jurisdiction,

under 28 U.S.C. 1332.

2.      The Plaintiff is a corporation, incorporated under the laws of the State of

Iowa, having its principal place of business in the State of Iowa.

3.      All Defendants are citizens of the State of Illinois and have their principal

place of business in the State of Illinois.

4.      The amount in controversy exceeds the applicable statutory minimum.

1

## VENUE

5.      All of the Defendants reside in Illinois within the area of the District Court for the Northern District of Illinois.

## PARTIES

6.      Plaintiff NCMIC is an Iowa Corporation, with its principal place of business in the State of Illinois.  NCMIC is an insurance company.

7.      Defendant, Bradley Hayashi (hereinafter "Hayashi"), an Illinois resident, is a chiropractor.

8.      Defendant, Hanover Park Physical Medicine & Rehabilitation, Ltd., is an Illinois limited liability company.  Based on information and belief, it provides services related to physical therapy, chiropractics and massage therapy.

9.      Defendant, Melina Kelley (hereinafter "Kelley"), resides in Illinois and was a patient of Hayashi.

## UNDERLYING COMPLAINT

10.      On or about December 12, 2007, Kelley filed a Complaint against Hayashi and Hanover Park Physical Medicine & Rehabilitation, Ltd, in the Circuit Court of Cook County, Illinois, Court Number 2007 L 13856 (hereinafter "Underlying Complaint.") A copy of the Underlying Complaint is attached hereto as Exhibit A.

11.      Hayashi provided physical therapy and chiropractic services at Hanover Park Physical Medicine & Rehabilitation.

12.      Beginning in 2004 and occurring on a weekly basis, Kelley obtained physical and chiropractic therapies from Hayashi.

2

13.     The usual treatments provided to Kelley included massage therapy, muscle stimulation with electricity and adjustments to the neck, back and hips.

14.     On each of these occasions, Kelley's treatment required that she partially disrobe to allow Hayashi and his employees access to her back, neck and shoulders.

15.     For approximately two years, until October 16, 2006, the treatment did not involve touching or manipulating Kelley's breasts, labia, vagina or clitoris.

16.     On October 16, 2006, Hayashi advised Kelley that her massage therapy required that she disrobe more fully.

17.     Thereafter, he did not provide Kelley with appropriate or lawful chiropractic, physical or massage therapy.

18.     Instead, he "sexually assaulted Kelley by touching her breasts, labia, vagina and clitoris without her consent and against her will..." (¶25)

19.     Kelley reported the incident to the Hanover Police Department.

20.     The Hanover Police Department and Cook County State's Attorney's office conducted an investigation and ultimately charged Hayashi with the crime of battery.

21.     In May of 2007, following a full trial, Hayashi was found guilty of the charges against him and sentenced.

22.     Kelley alleges that she has suffered extreme disruption of her daily life in her emotional and physical well being.

23.     The Plaintiff sued both Hayashi and Hanover  Park Physical Medicine & Rehabilitation Ltd., as his employer, under two theories: (1) Violation of the Illinois Gender Violence Act (740 ILCS 82) and (2) battery.

## POLICY OF INSURANCE

24.     NCMIC issued a policy of professional liability insurance to Hayashi, policy number MP00906897, with effective dates of June 24, 2206 to June 24, 2007 (hereinafter "the Policy").  A copy of the policy is attached hereto as Exhibit B.

25.     NCMIC did not issue a policy of insurance to Hanover Park Physical Medicine & Rehabilitation Ltd., and Hanover Park Physical Medicine & Rehabilitation Ltd. is not named as an insured or additional insured on the policy issued to Hayashi.

### Coverage Agreement

26.     The Policy in effect at the time of the alleged occurrence included the following Coverage Agreement:

> Within the limit of liability shown on the Declarations:
>
> We will pay on behalf of an **insured** all sums to which this insurance applies and for which an **insured** becomes legally obligated to pay as damages because of an **injury.**  The **injury** must be caused by an accident arising from an **incident** during the **policy period.**  The **injury** must also be caused by an **insured** under this policy.

### Definitions

27.     The Policy defined an "injury" as:

> bodily injury, sickness, disease or death sustained by any one person.

28.     The Policy defined an "incident" as:

> ...any negligent omission, act or error in the providing of **professional services....**

4

29.    The Policy define "Professional Services" as:

...services which are within the scope of practice of a chiropractor in the state in which the chiropractor is licensed.

30.    The Policy defines "Insured" as "any person or entity qualified under the "persons Insured" section of this Policy."

## Exclusions

e.    The policy also included the following exclusions:

Despite any other provision of this policy, this policy does not apply to claims arising out of, based upon, or attributable to any of the following:

A.    An act or omission violating any federal or state statute, or any county or municipal ordinance governing the commission of a crime;

* * *

F.    Sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act;

* * *

O.    The intentional infliction of injury;

## Defense and Settlement Clause

32.    The Policy provided the following relevant language regarding the duty to defend:

We have the right and duty to defend any **claim** or suit brought seeking **damages** against the **insured** for **injury** covered by this policy...

33.    Hayashi has tendered the Underlying Complaint to NCMIC.

34.    NCMIC Insurance Company has denied coverage.

## COUNT I
## AGAINST HANOVER PARK PHYSICAL MEDICINE & REHABILITATION, LTD.
### (No Insuring Agreement)

1-34.    NCMIC incorporates Paragraphs 1 through 34 of the common allegations as if set forth in Count I.

35.    NCMIC does not insure Hanover Park Physical Medicine & Rehabilitation, Ltd. under the express terms of the policy.

36.    The Coverage Agreement states that NCMIC will "pay on behalf of an insured all sums to which the insurance applies and for which an insured becomes legally obligated to pay...."

37.    The Definitions Sections defines an "insured" as the person or entity identified in the "persons insured" section of the Policy.

38.    The Person/Entity Insured section only identifies Hayashi.

39.    NCMIC did not issue a separate policy to Hanover Park Physical Medicine & Rehabilitation, Ltd.

WHEREFORE, the Plaintiff, NCMIC INSURANCE COMPANY, prays that this Court declare that NCMIC is not obligated to defend or indemnify Hanover Park Physical Medicine & Rehabilitation, Ltd. and grant NCMIC such other relief as in appropriate in this case.

**COUNT II**
**AGAINST BRADLEY HAYASHI**
**(No Injury)**

1-34.   NCMIC incorporates Paragraphs 1 through 34 of the common allegations as if set forth in Count II.

35.    The Coverage Agreement provides coverage that the insured is legally obligated to pay as damages because of "an **injury**."

36.    The Policy defines "injury" as " bodily injury, sickness, disease or death sustained by any one person."

37.    The underlying complaint does not allege any "bodily injury, sickness, disease or death."

38.    The Coverage Agreement does not provide coverage to Hayashi because there is no injury as defined by the policy.

WHEREFORE, the Plaintiff, NCMIC INSURANCE COMPANY, prays that this Court declare that NCMIC is not obligated to defend or indemnify BRADLEY HAYASHI and grant NCMIC such other relief as in appropriate in this case.

**COUNT III**
**AGAINST BRADLEY HAYASHI**
**(No Incident)**

1-34.   Plaintiff incorporates Paragraphs 1 through 34 of the common allegations as if set forth in Count III.

35.    The Coverage Agreement states that NCMIC will only provide coverage where the injury was "caused by an accident arising from an **incident**..."

36.    "Incident" is defined under the Policy as any "negligent omission, act or error in the providing of professional services."

37.    "Professional services" is defined under the Policy as services "within the scope of practice of a chiropractor."

38.    The acts alleged in the underlying complaint were not acts within the scope of practice of a chiropractor.

39.    The Coverage Agreement does not provide coverage to Hayashi because there was no incident as required by the Coverage Agreement.

WHEREFORE, the Plaintiff, NCMIC INSURANCE COMPANY, prays that this Court declare that NCMIC is not obligated to defend or indemnify BRADLEY HAYASHI and grant NCMIC such other relief as in appropriate in this case.

## COUNT IV
## AGAINST BRADLEY HAYASHI
### (No Accident)

1-34.    Plaintiff incorporates Paragraphs 1 through 34 of the common allegations as if set forth in Count IV.

35.    The Coverage Agreement states that NCMIC will only provide coverage where the injury was "caused by an accident arising from an incident..."

36.    The acts alleged in the underlying complaint were not an accident.

37.    Under Illinois law, an accident is an unforseen occurrence; it does not include the natural and ordinary consequence of an act.

38.    The acts alleged in the underlying complaint were not accidental.

39.    The Coverage Agreement does not provide coverage to Hayashi because there was no accident as required by the Coverage Agreement.

WHEREFORE, the Plaintiff, NCMIC INSURANCE COMPANY, prays that this Court declare that NCMIC is not obligated to defend or indemnify BRADLEY HAYASHI and grant NCMIC such other relief as in appropriate in this case.

## COUNT V
## AGAINST BRADLEY HAYASHI
### (Criminal Acts Exclusion)

1-34.    Plaintiff incorporates Paragraphs 1 through 34 of the common allegations as if set forth in Count V.

35.    The Policy has an exclusion to coverage for acts violating any federal or state statute or governing the commission of a crime.  See Policy Exclusion A.

36.    Hayashi was convicted of the crime of battery for the acts alleged in the underlying complaint.

37.    The acts by Hayashi are excluded from coverage under the Policy.

WHEREFORE, the Plaintiff, NCMIC INSURANCE COMPANY, prays that this Court declare that NCMIC is not obligated to defend or indemnify BRADLEY HAYASHI and grant NCMIC such other relief as in appropriate in this case.

## COUNT VI
## AGAINST BRADLEY HAYASHI
### (Sexual Acts Exclusion)

1-34.    Plaintiff incorporates Paragraphs 1 through 34 of the common allegations as if set forth in Count VI.

9

35.    The Policy has an exclusion to coverage for acts of "sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act." See Policy Exclusion F.

36.    Hayashi's conduct constituted acts of sexual impropriety, sexual intimacy, sexual assault and/or sexual harassment.

37.    The acts alleged in the underlying complaint are excluded from coverage under the Policy.

WHEREFORE, the Plaintiff, NCMIC INSURANCE COMPANY, prays that this Court declare that NCMIC is not obligated to defend or indemnify BRADLEY HAYASHI and grant NCMIC such other relief as in appropriate in this case.

## COUNT VII
## AGAINST BRADLEY HAYASHI
### (Intentional Acts Exclusion)

1-34.    Plaintiff incorporates Paragraphs 1 through 34 of the common allegations as if set forth in Count V.

35.    The Policy has an exclusion to coverage for acts involving the "intentional infliction of injury." See Policy Exclusion O.

36.    Based on information and belief, Hayashi's conduct involved the "intentional infliction of injury."

37.    The acts alleged in the underlying complaint are excluded from coverage under the Policy.

10

WHEREFORE, the Plaintiff, NCMIC INSURANCE COMPANY, prays that this Court declare that NCMIC is not obligated to defend or indemnify BRADLEY HAYASHI and grant NCMIC such other relief as in appropriate in this case.

Respectfully requested,

NCMIC Insurance Company,

By:_____
One of its attorneys

Richard M. Clark
ARDC: 00452823
rclark@mckenna-law.com
Kristin D. Tauras
ARDC:06216004
ktauras@mckenna-law.com
McKenna Storer
33 North LaSalle, Suite 1400
Chicago, Illinois 60602
(312) 558-3900

# 08 C 885

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

### COUNTY DEPARTMENT – LAW DIVISION

JUDGE CONLON
MAGISTRATE JUDGE COX

| | | |
|---|---|---|
| Melina Kelley, | ) | |
| | ) | |
| Plaintiff, | ) | **TRIAL BY JURY** |
| | ) | **DEMAND** |
| | ) | |
| v. | ) | No. |
| | ) | |
| Bradley Hayashi; Hanover Park Physical | ) | 2007L013856 |
| Medicine & Rehabilitation, Ltd. | ) | CALENDAR/ROOM F |
| Defendants. | ) | TIME 00:00 |
| | | PI Stat Misc Action |

### COMPLAINT AT LAW

NOW COMES the Plaintiff MELINA KELLEY, by and through her attorneys, K. MORRIS

HOFFER, P.C., and for her causes of action against Defendants, BRADLEY HAYASHI

(hereinafter "HAYASHI"), and HANOVER PARK PHYSICAL MEDICINE &

REHABILITATION, LTD., (hereinafter "HANOVER"), states as follows:

### PARTIES

1.    Plaintiff MELINA KELLEY (hereinafter "Plaintiff"), is an adult female resident of

the state of Illinois.

2.    Defendant HAYASHI is an adult male, and at all times relevant herein, HAYASHI

resided and worked in Illinois.

3.    Defendant HANOVER is an Illinois Corporation, and at all times relevant herein

HANOVER was engaged in the business of providing services related to physical

therapy, chiropractics, and massage therapy.

4.    Defendant HAYASHI is the President and Secretary of HANOVER PARK



EXHIBIT
A

PHYSICAL MEDICINE & REHABILITATION, LTD.

5.    On information and belief, HAYASHI is the sole owner of HANOVER.

6.    HANOVER'S primary place of business is located at 1802 Irving Park Road in
      Hanover Park, Cook County, Illinois.

7.    The events and actions giving rise to this lawsuit all occurred in Cook County,
      Illinois.

## FACTS

8.    Plaintiff suffers from scoliosis, a condition involving curvature and deformity of the
      spine.

9.    Plaintiff sought treatment from HAYASHI and HANOVER for her scoliosis.

10.   HAYASHI and HANOVER represented to Plaintiff that they were qualified to
      conduct certain physical therapies on Plaintiff for the purpose of treating scoliosis and
      reducing the pain and other negative symptoms of her condition.

11.   Plaintiff relied on the representations made by HAYASHI and HANOVER, and
      became a regular client of HAYASHI and HANOVER during 2004.

12.   Beginning in 2004, and occurring on a weekly basis therafter, Plaintiff obtained
      physical and chiropractic therapies from HAYASHI and HANOVER, always at the
      offices located at 1802 Irving Park Road in Hanover Park, Illinois.

13.   The usual treatment given to Plaintiff included massage therapy, muscle stimulation
      with electricity and "adjustments" of her neck, back, and hips.

14.   On most occasions, Plaintiff was given massage therapy by certain employees of
      HANOVER who were identified to her as certified massage therapists.



15.    HAYASHI, who was identified as a chiropractor and the owner of HANOVER, usually treated Plaintiff after she had been seen by one of the massage therapists on his staff.

16.    Typically, HAYASHI would "adjust" her neck, shoulders, and hips, using his hands to manipulate her muscles and limbs.

17.    On certain occasions, when HANOVER represented to Plaintiff that the regular massage therapists were unavailable, HAYASHI himself would conduct the "massage" portion of her therapy.

18.    On all occasions, Plaintiff believed that HAYASHI and HANOVER were engaged in the legitimate treatment of her scoliosis, and she reasonably relied on HAYASHI and HANOVER to provide her with medically appropriate advice and treatment.

19.    On all occasions, Plaintiff's treatment required that she partially disrobe, to allow HAYASHI and HANOVER access to her back, neck, and shoulders.

20.    Plaintiff was never advised that her treatment required that HAYASHI and HANOVER touch her breasts, labia, vagina, or clitoris.

21.    For approximately two years, from her first therapy at HANOVER until OCTOBER 16, 2006, Plaintiff obtained treatment from HAYASHI and HANOVER that did NOT involve touching or manipulating her breasts, labia, vagina, or clitoris.

22.    On October 16, 2006, HAYASHI and HANOVER advised Plaintiff that her massage therapy required that she disrobe more fully than she had on previous occasions.

23.    Plaintiff complied with the directions she was given by HAYASHI and HANOVER, in reliance on what she reasonably believed was appropriate medical advice.

24. On October 16, 2006, HAYASHI and HANOVER did not provide Plaintiff with appropriate or lawful chiropractic, physical, or massage therapy.

25. Instead, on October 16, 2006 HAYASHI sexually assaulted Plaintiff, by touching her breasts, labia, vagina, and clitoris without her consent and against her will, during the course of an appointment that was designated by HAYASHI and HANOVER as massage therapy.

26. During the appointment, HAYASHI spoke to Plaintiff as if he was engaging in a normal course of therapy, but his breathing and voice changed in a way that seemed consistent with sexual arousal, and at one point Plaintiff sensed that HAYASHI had developed an erection and brushed against her body with it.

27. During the appointment, Plaintiff was terrified of and traumatized by HAYASHI's conduct, and experienced extreme anxiety, panic, and a sense of interference with her emotional and mental functioning.

28. Plaintiff's extreme anxiety and trauma resulted, in part, from the following:

   a. Plaintiff reasonably trusted HAYASHI and HANOVER, and believed that HAYASHI and HANOVER would only treat her in a way that was ethical and medically appropriate;

   b. Plaintiff reasonably trusted that HAYASHI and HANOVER knew she did not want, or consent to, touching of a sexual nature;

   c. Plaintiff had never before in her life been in a situation where a medical practitioner took advantage of his position and her vulnerability to engage in sexual assault under the guise of appropriate and lawful treatment;

d.  Plaintiff did not know what to do or how she ought to respond to HAYASHI's

behavior.

29.     Despite Plaintiff's extreme and reasonable anxiety, she made numerous efforts to

communicate discomfort to HAYASHI, including by requesting blankets to cover her

body with, and saying that everything was not okay with her.

30.     Ultimately, and despite her extreme anxiety, Plaintiff successfully stopped

HAYASHI and HANOVER, interrupting HAYASHI's "treatment" of her, and she

left HANOVER well before the scheduled end of her appointment.

31.     Plaintiff left HANOVER in a state of extreme shock and distress.

32.     Plaintiff feared that HAYASHI and HANOVER would deny doing to her what had

been done.

33.     Plaintiff feared that her account of what had happened to her would not be believed,

or she would be told that what had happened to her did not violate her, as she felt that

it had.

34.     Plaintiff feared that she would be blamed for HAYASHI and HANOVER's conduct.

35.     Despite her fears and anxieties, Plaintiff immediately reported what HAYASHI and

HANOVER had done, including by going to the Hanover Park Police Department.

36.     The Police Department and the Cook County State's Attorney's office conducted an

investigation in response to what Plaintiff reported to them.

37.     Ultimately, HAYASHI was charged with the crime of battery for his treatment of

Plaintiff.

38.    In May 2007, after a full trial in a criminal court of the Circuit Court of Cook County, HAYASHI was found guilty of the charges against him and sentenced to ten days in jail and one year of probation.

39.    As a result of the direct and indirect acts of the Defendants HAYASHI and HANOVER, Plaintiff suffered extreme disruption to her daily life and to her emotional and physical wellbeing.  Among other reasonably foreseeable results of HAYASHI and HANOVER's conduct, Plaintiff has suffered from the following: sleep disruptions; recurrent and distressing nightmares; physical pain related to stress; acute anxiety; traumatizing and repetitive flashbacks to October 16, 2006; paralyzing feelings of shame and guilt; terror and distress related to obtaining the care and treatment she needs for her scoliosis; loss of libido; panic attacks; distressing levels of rage; an inability to feel trusting of people on whom she is required to depend, including medical care providers; overwhelming grief; a shattered sense of bodily and emotional integrity.

## COUNT 1: VIOLATION OF THE ILLINOIS GENDER VIOLENCE ACT—HAYASHI

Plaintiff incorporates Paragraphs 1 through 39 of this Complaint as if fully set forth under this count and further alleges that:

40.    HAYASHI's acts against Plaintiff were physical intrusions and physical invasions of a sexual nature under coercive conditions.

41.    HAYASHI's acts against Plaintiff were in violation of the Illinois Gender Violence Act (740 ILCS 82).



42.    As a result of HAYASHI's actions Plaintiff suffered and continues to suffer

emotional distress and other damages as described herein.

WHEREFORE, Plaintiff demands judgment against HAYASHI in an amount in excess of

$50,000.00, plus costs, disbursements, reasonable attorney's fees, interest, and whatever relief

the court deems just and equitable.


**COUNT 2: VIOLATION OF THE ILLINOIS GENDER VIOLENCE ACT—HANOVER**

Plaintiff incorporates Paragraphs 1 through 42 of this Complaint as if fully set forth under

this count and further alleges that:

43.    Because HAYASHI is the President of HANOVER, all the actions engaged in by

HAYASHI when he is acting in the course and scope of his work at HANOVER, are

actions of HANOVER.

44.    Because HAYASHI's acts against Plaintiff were in violation of the Illinois Gender

Violence Act (740 ILCS 82), and because they were engaged in by him while he was

acting in the course and scope of his work at HANOVER, HANOVER violated the

Illinois Gender Violence Act (740 ILCS 82).

WHEREFORE, Plaintiff demands judgment against HANOVER in an amount in excess of

$50,000.00, plus costs, disbursements, reasonable attorney's fees, interest, and whatever relief

the court deems just and equitable.

## COUNT 3: BATTERY—HAYASHI

Plaintiff incorporates Paragraphs 1 through 39 of this Complaint as if fully set forth under this count and further alleges that:

45.   HAYASHI's intentional acts on October 16, 2006 caused harmful and offensive contact to the Plaintiff's person.

46.   As a direct result of this battery Plaintiff has sustained and continues to suffer the injuries and damages described herein.

47.   Because Defendant HAYASHI has been found guilty of battery against Plaintiff for the actions spelled out in this complaint, neither Defendant HAYASHI nor Defendant HANOVER may deny that HAYASHI unlawfully battered Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants HAYASHI in an amount in excess of $50,000.00, plus costs, disbursements, reasonable attorney's fees, interest, and whatever relief the court deems just and equitable.


## COUNT 4: BATTERY—HANOVER

Plaintiff incorporates Paragraphs 1 through 39 and 45 through 47 of this Complaint as if fully set forth under this count and further alleges that:

48.   Because HAYASHI is the President of HANOVER, all the actions engaged in by HAYASHI when he is acting in the course and scope of his work at HANOVER, are actions of HANOVER.

49.    Because HAYASHI's acts against Plaintiff were acts of unlawful battery and because

they were engaged in by him while he was acting in the course and scope of his work

at HANOVER, HANOVER engaged in acts of unlawful battery against Plaintiff.


WHEREFORE, Plaintiff demands judgment against HANOVER in an amount in excess of

$50,000.00, plus costs, disbursements, reasonable attorney's fees, interest, and whatever relief

the court deems just and equitable.


Attorney for Plaintiff


Kaethe Morris Hoffer
Attorney No. 42572
K. Morris Hoffer, P.C.
1609 Sherman Avenue
Evanston IL 60201
(847) 424-0700



NCMIC INSURANCE COMPANY
14001 UNIVERSITY AVENUE
CLIVE, IA 50325-8258
800-247-8043

# 08 C 885

### PROFESSIONAL LIABILITY DECLARATIONS
### Chiropractic Malpractice - Occurrence

Policy #: MP00906897

Policy Period: From 06/24/2006 to 06/24/2007 12:01 am
Local Time at the address of the Named Insured

Reason for new Declaration:
Renewal

**JUDGE CONLON**
**MAGISTRATE JUDGE COX**

Mailing Address: Bradley Hayashi DC
1802 Irving Park RD
Hanover Park IL 60133

| Person/Entity Insured: | Limits of Liability<br>Per Medical Incident/Policy Aggregate | Annual<br>Premium |
|---|---|---|
| Bradley Hayashi DC | 1,000,000/3,000,000 | 3,641.00 |
| Additional Coverages: | | |
| Manipulation Under Anesthesia (Form #03-2007 06/2003) | Manipulation Under Anesthesia | No Charge |
| Discounts: | | |
| Claim Free Discount | | -218.00 |
| | | 3,423.00 |

---

### State Mandatory Endorsements Made Part of This Policy

Pool Exclusion (Occurrence) (Form #03-2022 09/2003)

Illinois Exclusions Endorsement (Form #14-2000 07/1999)

Illinois Cancellation Provision Endorsement (Form #14-2001 07/1999)

Illinois Other Insurance Endorsement (Form #14-2002 07/1999)

Illinois Bankruptcy or Insolvency Endorsement (Form #14-2003 04/2003)

| New App Fee | 0.00 |
|---|---|
| Taxes | 0.00 |

| Annual Premium | 3,423.00 |
|---|---|
| THIS IS NOT A BILL | |

THIS IS YOUR DECLARATIONS PAGE. PLEASE KEEP FOR YOUR RECORDS.

THIS IS NOT A BILL.



EXHIBIT
B



NCMIC INSURANCE COMPANY
14001 UNIVERSITY AVENUE
CLIVE, IA 50325-8258
800-247-8043

## PROFESSIONAL LIABILITY DECLARATIONS
### Chiropractic Malpractice - Occurrence

Policy #: MP00S06897

Policy Period: From 06/24/2006 to 06/24/2007 12:01am

Local Time at the address of the Named Insured

| | |
|---|---|
| | Reason for new Declaration:<br>Renewal |

Mailing Address: Bradley Hayashi DC
1802 Irving Park RD
Hanover Park IL 60133

**Proof of Insurance has been provided to the following Certificate Holders:**

ACN GROUP INC - PO BOX 212, MINNEAPOLIS, MN 55440-0212

THIS IS YOUR DECLARATIONS PAGE. PLEASE KEEP FOR YOUR RECORDS.

THIS IS NOT A BILL.

Issued 06/25/2006 at Clive, IA
Form: MP2003 06/2003

- Insured Copy -

Form: U023 04/99
Client

# PROFESSIONAL LIABILITY INSURANCE POLICY

## (CHIROPRACTIC MALPRACTICE)

(OCCURRENCE FORM)

THIS IS A NON-ASSESSABLE POLICY

Issued by:

# NCMIC INSURANCE COMPANY

(A Stock Insurance Company, herein called the Company)
Incorporated under the
Laws of the State of Iowa
Home Office:  14001 University Ave
Clive Iowa 50325

**In return for payment of premium and subject to all terms of this policy, we agree with you as follows:**

**Definitions**

Throughout this policy, **you** and **your** mean the **insured** on the Declarations. **We**, **our** and **us** mean NCMIC Insurance Company.

Other words and phrases with special meanings are defined below. They are bold faced when used in this policy (which includes any endorsements).

1.  **Claim** means a written demand for money or services arising from an alleged **injury** to which this insurance applies.

2.  **Damages** mean the monetary portion of any judgment, award or settlement, but does not include:

    (a) punitive or exemplary **damages**, any **damages** that are a multiple of compensatory **damages**, fines, penalties or sanctions; or
    (b) judgments or awards considered uninsurable by law.

3.  **Injury** means bodily injury, sickness, disease or death sustained by any one person.

4.  **Insured** means any person or entity qualified under the "Persons Insured" section of this policy.

5.  **Incident** means any negligent omission, act or error in the providing of **professional services**. All such omissions, acts or errors causally related to the rendering of or failure to render **professional services** to one person shall be considered one **incident**. Causally related acts, errors and omissions includes acts, errors and omissions that have a common cause or form a causal chain of events. An **incident** shall be deemed to have occurred at the time of the earliest act, error or omission comprising that **incident**.

6.  **Policy period** means the period of time shown on the Declarations unless the policy is effectively cancelled prior to the stated expiration date pursuant to the cancellation provision state herein. This policy is effective beginning on the date specified on the Declarations at 12:00 a.m. local time at the address listed on the Declarations and ends on the date specified on the Declarations at 12:01 a.m. local time at the address listed on the Declarations.

7.  **Professional services** means services which are within the scope of practice of a chiropractor in the state in which the chiropractor is licensed.

    **Professional Services** does not include any services furnished by an **insured** as a practitioner of any other healing or treating art.

8.  **Locum Tenens** means a health care provider temporarily employed by the **insured** and serving in the place of an **insured**, provided that the substitute does not provide **professional services** at the same time as the **insured** being replaced.

## Coverage Agreement

Within the limit of liability shown on the Declarations:

**We** will pay on behalf of an **insured** all sums to which this insurance applies and for which an **insured** becomes legally obligated to pay as **damages** because of an **injury**. The **injury** must be caused by an accident arising from an **incident** during the **policy period**. The **injury** must also be caused by an **insured** under this policy.

## Defense and Settlement Clause

**We** have the right and duty to defend any **claim** or suit brought seeking **damages** against the **insured** for **injury** covered by this policy. **We** have the right to appoint counsel and **we** may investigate any **claim** made or suit brought. With **your** written consent, **we** may settle any **claim** or suit as **we** believe may be proper. **We** shall not be obligated to pay any **claim** or judgment or to defend or continue to defend any suit after the limit of **our** liability is exhausted because of payment of judgments or settlements. **Your** consent shall not be required to make a settlement or payment after a judgment has been entered against **you**.

## Supplementary Payments

In addition to the limit of **our** liability shown on the Declarations, **we** also will pay:

1. All expenses incurred by **us** when defending any **claim** or suit covered by this policy.

2. All court costs taxed against the **insured** in any **claim** or suit defended by **us**.

3. All reasonable expenses incurred by **you** when **you** are out of **your** office at **our** request to assist **us** in the investigation or defense of a **claim** or suit, including actual loss of earnings up to $500 per day because of time off from work, up to a maximum of $2,500 per **incident**/$5,000 aggregate per **policy period**.

4. Any interest incurred on that portion of a judgment covered under this policy and within the applicable limit of liability.

5. Premiums on appeal bonds and premiums on bonds to release attachments in any suit subject to defense under this policy. The bonds must be for an amount not more than the limit of **our** liability. However, **we** have no obligation to furnish or obtain these bonds.

6. Legal fees and **damages** that arise out of **your** chiropractic utilization review services, including the rendering of an opinion on the adequacy, necessity or reasonableness of care furnished by another chiropractor based on the review of the patient's records without a physical examination. Supplementary payments for legal fees and **damages** under this section will be limited to $25,000 per occurrence and $50,000 aggregate for all actions arising during the **policy period.**

7. Legal fees and **damages** that arise out of **your** peer review services, including services as a member of a formal accreditation, standards review or other professional board or committee related only to chiropractic. Peer review means the evaluation of the **professional services** rendered by another chiropractor for the purpose of determining the qualifications and/or the competency of the

chiropractor. Supplementary payments for legal fees and **damages** under this section will be limited to $25,000 per occurrence and $50,000 aggregate for all actions arising during the **policy period.**

8. Legal fees and expenses to defend **you** in a revocation, suspension or disciplinary action before the State Licensing Board commencing during the **policy period**. Supplementary payments under this section shall be limited to $5,000 per action and $10,000 per **policy period**. Further, no payments will be made for any appeal after the State Licensing Board has rendered a final decision.

**Your** consent is not needed to make any payment under the "Supplementary Payments" section of this policy. Further, this section does not change any other terms or conditions of this policy.

### Persons Insured

The persons insured under this policy are:

1. The **insured** shown on the Declarations.

2. Each chiropractic assistant or nurse employed by **you**, but only if they are acting within the scope and course of their duties as such in the providing of **professional services**. Also, they must be under the supervision, if required by state law, of a licensed chiropractor.

3. **Locum Tenens** temporarily employed by and serving in the place of an **insured**. Coverage for **locum tenens** for any one **insured** shall not exceed 60 days per policy period. An **insured** must submit an application for the **locum tenens** and obtain **our** underwriting approval before coverage for any **locum tenens** will be provided.

"Persons Insured" does not include any other licensed health care providers, including but not limited to other licensed chiropractors, except the **insured**.

### Territory

This policy applies to the providing of or failure to provide **professional services** anywhere in the world, provided the **claim** or suit is brought within the United States of America, its territories or possessions, or Canada.

### Exclusions

Despite any other provision of this policy, this policy does not apply to **claims** arising out of, based upon, or attributable to any of the following:

A. An act or omission violating any federal or state statute, or any county or municipal ordinance governing the commission of a crime.

B. The providing of or failure to provide **professional services** while **you**, or any other **insured** for whose acts or omission **you** are legally responsible, is under the influence of intoxicants or drugs.

C. The providing of **professional services** when **you** are not licensed to practice.



D.  Any liability for the acts of another assumed by an **insured** under any contract or agreement. However, this exclusion does not exclude liability under contracts or agreements with any managed care organization (MCO) whose members or subscribers are patients who are furnished **professional services** by **you** under such contract or agreement, but only to the extent of the MCO's liability for **damages** because of an **injury** caused by an **incident** arising out of the providing or failure to provide **professional services** by **you**.

E.  False imprisonment; false arrest; libel; slander; defamation; invasion of privacy, discrimination.

F.  Sexual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act.

G.  The transmission of any communicable disease.

H.  Manipulation or treatment, including adjustment, while a person is under anesthesia or sedation (MUA).

I.  Needle acupuncture

J.  Obstetrics.

K.  Surgery.

L.  The supplying of **professional services** to animals.

M.  The prescribing of any substance that state or federal law prohibits dispensing or that requires a prescription

N.  Pollution, contamination or waste disposal.

O.  The intentional infliction of **injury**.

P.  Any **claim** under an Unfair Trade Practices Act, or any **claim** made under Title 18 of the United States Code, sections 1962 to 1964, otherwise called the RICO laws.

Q.  This policy does not apply to punitive or exemplary **damages**, fines, penalties imposed by law, or matters uninsurable under law pursuant to which this policy is construed, unless the law of the state in which the **insured** is licensed to practice prohibits such an exclusion.

R.  Despite any other provision of this policy, this policy does not apply to any **claim** alleged to be caused in whole or in part from any violation of the Health Insurance Portability and Accountability Act (HIPAA), or any other state or federal privacy regulation.

S.  Despite any other provision of this policy, this policy does not apply to any **claim** alleged to be caused by:

   1.  **your** breach of **fiduciary duty**;
   2.  **your** actual gaining of personal profit, or advantage to which **you** are not legally entitled;



3. remuneration paid to **you** if such payment is held by the courts to be in violation of the law;
4. **your** alleged or actual involvement in any:

    a. anti-trust law violation
    b. agreement or conspiracy to restrain trade;

5. the failure to collect contributions owed to any Employee Benefit Plan or the failure to return any contributions if such amounts are, or could be, chargeable to the Employee Benefit Plan;
6. benefits payable or paid to a participant or beneficiary of an Employee Benefit Plan

For purposes of this exclusion, **fiduciary duty** means:

The duty that arises when the business transacted, money or property handled, is not **your** own or for **your** benefit, but for the benefit of another person, to whom **you** stand in a relationship implying and necessitating confidence, trust and good faith, whether or not that duty arises by matter of law, contract or otherwise. This includes duties, which may arise as a fiduciary under the Employee Retirement Income Security Act of 1974 or any of its amendments.

T. Any **claim** brought under any workers compensation or similar statute.

## Limit of Liability

A. **Our** limit of liability for **damages** for which this insurance applies shall not exceed the amount stated as the Per Claim Limit of Liability on the Declarations, regardless of the number of: (a) **insureds**; (b) claimants or persons who sustain **damages**; (c) **claims** or suits brought; (d) policies issued by **us**; or (e) number of policy periods during which treatment is rendered.

B. **Our** total liability for all **damages** during a **policy period** shall not exceed the amount stated as the Policy Aggregate Limit of Liability on the Declarations, regardless of the number of: (a); **claims**; (b) **insureds**; (c) claimants or persons who sustain **damages**; (d) policies issued by **us**; or (e) number of policy periods during which treatment was rendered.

C. In the event an **insured** is afforded coverage for a **claim** under another policy **we** have issued, then in no event will **we** pay **damages** in an amount greater than the highest limit of liability available under any one policy **we** issued and under which **you** are entitled to coverage.

The limits of liability shown on the Declarations as applying to the Per Claim Limit of Liability is the limit of **our** liability for all **damages**, including **damages** sustained by other persons. **Damages** sustained by other persons include, but are not limited to, **damages** for loss of services, loss of consortium, wrongful death and emotional distress. The limits of liability in effect at the time of the alleged **injury** will be **our** limit of liability for **damages**.

## Conditions

1. Notice of **Claim** or Suit. When **you** become aware of any **claim** or suit alleging **injury**, written notice shall be given to **us** as soon as possible. The notice shall contain information sufficient to identify the **insured** and the time, place and circumstances of the alleged **injury**. The name and address of the person claiming an **injury** and of any witnesses to the **injury** also shall be included in the notice. If a suit is brought against

the **insured**, the **insured** must immediately forward to **us** every demand, notice, summons, complaint or other process alleging **injury** received by the **insured** or the **insured's** representative.

2. Assistance and Cooperation of the **Insured**. The **insured** shall cooperate with **us**. Upon **our** request, an **insured** shall attend hearings and trials and assist in making settlements. If requested, the **insured** shall also secure and give evidence, report facts, obtain the attendance of witnesses and otherwise assist in the conduct of suits. Also, upon request, the **insured** will help enforce any right of contribution, indemnity or apportionment that an **insured** might have, so that **we** might exercise those rights in the name of an **insured**. The **insured** shall not, except at an **insured's** cost and with **our** prior written consent, voluntarily make any payment, assume any obligation or incur any expense. An **insured** shall do nothing to prejudice **our** defense of any suit. An **insured** shall not enter into any oral or written contracts or agreements that in any way impair or waive **our** right of defense.

3. Action Against Us. No legal action may be brought against **us** until there has been full compliance with all the terms of this policy by an **insured**. In addition, no legal action may be brought against **us** until the amount of an **insured's** obligation to pay is finally determined either by judgment after trial or by written agreement between the claimant and **us** or **you** with **our** approval.

   No other person or organization has any right under this policy to make **us** a party to any action to decide an **insured's** liability.

4. Other Insurance. If an **insured** has other insurance that is applicable to any **claim**, suit or **incident** covered under this policy, then this policy is excess insurance over any other applicable insurance.

5. Subrogation. If any payment is made under this policy, **we** shall be subrogated to all the **insured's** rights of recovery against any person or organization. The **insured** shall execute and deliver instruments and papers and do whatever is necessary to secure such rights. The **insured** shall do nothing to prejudice those rights.

6. Premiums. All premiums for this policy shall be computed according to **our** rules, rates and rating plans in effect with respect to the period for which premiums are due. The premium is due on the date set in the premium notice. If the premium is not paid by that date, the policy will be cancelled.

7. Changes. Notice to any person or knowledge possessed by any person shall not cause a waiver or change in any part of this policy or stop **us** from asserting any right under the terms of this policy. The terms of this policy may only be waived or changed by endorsement signed by **our** Secretary and issued as a part of this policy.

8. Assignment. The interest of any **insured** in this policy is not assignable. If the **insured** shall die or be adjudged incompetent, this insurance shall thereupon terminate for such person but shall cover the **insured's** legal representative as the **insured** with respect to liability previously incurred and covered by this insurance.

9. Terms Conform to Statute or Regulation. Any term of this policy that is in conflict with a statute or regulation of the state where the policy is issued is amended to conform to such statute or regulation.

10. Cancellation and Non-renewal. **You** may cancel this policy by returning it to **us**. **You** may also cancel by giving **us** advance written notice of when the cancellation is to take effect. **We** may cancel or not renew this policy by mailing notice to **you** at **your** last known address. Notice to **you** must be sent at least sixty (60)



days before the cancellation or non-renewal date. If **you** fail to pay any premium when due, **we** may cancel this policy by mailing notice to **you** at **your** last known address at least ten (10) days in advance. The reason for any cancellation or non-renewal will be stated in the notice. Proof of mailing is proof of notice for purposes of this provision. The effective date and hour of cancellation stated in the notice or the time of surrender of the policy shall become the end of the **policy period**.

If this policy is cancelled, **you** may be entitled to a premium refund, but a refund or offer to make a refund is not a condition of cancellation. Any refund will be computed pro rata.

11. Examination of **Your** Books and Records. **We** may examine and audit **your** books and records as they relate to this policy during the **policy period** and up to three years following termination or expiration of the policy.

12. Mutual Holding Company. **You** are a member of National Chiropractic Mutual Holding Company. **You** may participate at the annual meeting according to the provisions of the bylaws. The board of directors shall decide the time and place of the annual meeting according to the bylaws and the laws of the State of Iowa.

**In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representatives.**

Secretary _____          President _____
              Roger Schlueter                              Patrick McNerney



 **NCMIC Insurance Company**
*A member of NCMIC Group, Inc.*

14001 University Avenue, Clive, Iowa 50325-8258
Local 515-313-4500     Toll-Free 800-247-8043
Claims Reporting Line 800-242-4052

I hereby certify that the attached copy is true
and correct as the policy was written at the
date of loss.

DATED December 20, 2007 AT CLIVE, IOWA

Roger Schlueter
Chief Financial Officer and
Corporate Secretary