Not Reported in F.Supp.2d                                          Page 1
Not Reported in F.Supp.2d, 2006 WL 1004862 (S.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

NCMIC Ins. Co. v. Johnson
S.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. Illinois.
NCMIC **INSURANCE** COMPANY, Plaintiff,
v.
Timothy JOHNSON, and Renae Bennion, Defendants.
**No. 04-CV-0221-MJR.**

April 17, 2006.

David H. Levitt, Hinshaw & Culbertson, Chicago, IL, John L. Gilbert, Hinshaw & Culbertson LLP, Edwardsville, IL, for Plaintiff.

Pat Ducey, Law Offices of Pat Ducey, Troy, IL, for Defendants.

***ORDER FOLLOWING BENCH TRIAL***
REAGAN, District Judge:

#### A. *Introduction*

**\*1** Plaintiff NCMIC **Insurance** Company ("NCMIC") issued a **professional** liability **insurance** policy to Timothy Johnson ("Johnson"), a **chiropractor**, that was in effect on February 23, 2002. On December 13, 2003, Rennae Bennion ("Bennion") filed suit in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois (Case # 03-L-2035), alleging that on or about February 23, 2002, Johnson "physically and sexually touched and assaulted" her "without her consent." On April 1, 2004, NCMIC filed the present action with this Court seeking a **declaratory** judgment that it is not obligated to defend or indemnify Johnson as to Bennion's Madison County Complaint.

This case proceeded to bench trial before the undersigned Judge on January 20, 2006. Pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 52,** the Court now finds and concludes as follows.

#### B. *Findings of Fact*

At trial, the only evidence presented to the Court were NCMIC's Exhibits 1 through 13. Johnson did not present any exhibits, and neither party called any witnesses. Based on that portion of the evidence properly before the Court, the Court makes the following findings of fact:

1. On December 18, 2003, Bennion filed a lawsuit against Johnson in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois.

2. Count I of Bennion's Complaint [FN1] is for battery, and alleges that Johnson "physically and sexually touched and assaulted [Bennion] without her consent" and that Johnson "intended to, and caused, a harmful and offensive contact with [Bennion]."

> FN1. Bennion's original Complaint (Pl.Ex.2) and Bennion's proposed Count III (Pl.Ex.3) hereinafter will be referred to collectively as the "Bennion Complaint."

3. Count II alleges intentional infliction of emotional distress. It also alleges that Johnson "physically and sexually touched and assaulted [Bennion] without her consent," that Johnson's acts were extreme and outrageous, and that Johnson knew that his actions were certain or substantially certain to cause Bennion to suffer severe emotional distress.

4. Bennion also has filed a motion to amend her Complaint to add Count III. Bennion's proposed Count III claims negligence against Johnson (Pl.Ex.3). It alleges that Johnson "physically and sexually touched and assaulted [Bennion] without her consent," and that he had a duty to exercise due care and caution "to avoid sexually touching and assaulting other persons in his presence."The only allegation of negligence is that "[Johnson] touched [Bennion's] breasts, stomach, back and buttocks," which allegedly caused "personal and emotional injuries."

5. Johnson is a **chiropractor**.

6. The Bennion Complaint does not allege that Johnson is a **chiropractor**, nor that Bennion was a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004862 (S.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

patient of Johnson.

7. Each Count of the Bennion Complaint (Pl.Ex.'s 2 and 3, ¶ 3 of each Count) alleges: "On or about February 23, 2002, [Bennion] was invited into [Johnson's] business office located at 303 Main Street in the City of Troy, Madison County, Illinois, wherein [Johnson] physically and sexually touched and assaulted [Bennion] without her consent."

**\*2** 8. The Bennion Complaint does not allege any **professional** malpractice.

9. The Bennion Complaint alleges that Johnson was arrested, pleaded guilty, and was convicted of battery in violation of **720 ILCS 5/12-3(a)(2)** for the conduct alleged in her Complaint (Pl.Ex.2, ¶ 4).

10. NCMIC issued a **Professional** Liability Policy to Johnson (Pl.Ex.1). That policy, policy number MP00082016, was in effect on February 23, 2002, and has policy limits of $500,000.

11. That policy provides coverage only for injury arising from a "medical incident." The policy contains the following pertinent provisions (bold face type is in the original, and refers to terms defined elsewhere in the policy):
"We will pay on **your** behalf all sums to which this **insurance** applies and which **you** become legally obligated to pay as **damages** because of an **injury.**The **injury** must be caused by an accident arising from a **medical incident** during the **policy period.**The **injury** must also be caused by **you** or another **insured** under this policy."
\* \* \*
"**Medical incident** means any negligent omission, act or error in the providing of **professional** services."
\* \* \*
"**Professional** services means:
(a) those services which are within the scope of practice of a **chiropractor** in the state in which the **chiropractor** is licensed."
\* \* \*
"**Injury** means bodily injury, sickness, disease or death sustained by any one person."

\* \* \*
"Despite any other provision of this policy, this policy does not apply to **medical incidents** arising from, based upon, or attributable to any of the following:
A. An act or omission violating any federal or state statute, or any county or municipal ordinance governing the commission of a crime.
F. **Sexual** impropriety, **sexual** intimacy, **sexual** assault, **sexual** harassment or any other similarly defined act. However, if any suit is filed against an **insured** which is otherwise covered by this policy, then **we** will provide a defense to all allegations made until either **you** agree with **us** that **we** no longer have an obligation to defend or a court finds that **we** no longer have an obligation to defend.
L. The intentional infliction of **injury.**"

12. Upon receiving notice of the Bennion Complaint from Johnson, NCMIC advised Johnson that it would undertake his defense through counsel of his own choice at NCMIC's expense, but NCMIC reserved its rights as to coverage, as well as its right to withdraw from that defense at any time in its discretion (Pl.Ex.'s 6 through 8).

13. NCMIC filed this **Declaratory** Judgment Action on April 1, 2004 (Doc. 1). After the Bennion Complaint was amended to add Count III, NCMIC filed its Amended Complaint for **Declaratory** Judgment on September 6, 2005 (Doc. 35).

### C. Conclusions of Law

1. This Court exercises subject matter jurisdiction over this action pursuant to **28 U.S.C. § 1332.**

**\*3** 2. A duty to defend exists where the allegations of the complaint, when compared to the terms of the **insurance** policy, fall within, or *potentially within,* the terms of the policy. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* **607 N.E.2d 1204, 1220 (Ill.1992).** A duty to indemnify, on the other hand, arises only when the insured's activity and the resulting loss or damage *actually* fall within a policy's coverage. *Id.* **at 1221.**

3. In this matter, NCMIC asks this Court to declare

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004862 (S.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

not only that it has no duty to defend Johnson, but also that is has no duty to *indemnify* Johnson. To be sure, in some respects "[a]n insurer's duty to indemnify is narrower than its duty to defend....."*Id.*Accordingly, a declaration by this Court that NCMIC has no duty to *defend* Johnson might be seen as effectively determining that NCMIC has no duty to *indemnify* Johnson. Nonetheless, while perhaps this Court's ruling on the duty to defend issue might be interpreted as *indirectly* answering NCMIC's question regarding indemnification, this Court will not answer the indemnification question *directly*.

4. Illinois Courts have repeatedly held that "the duty to indemnify arises *only* when an insured becomes legally obligated to pay damages in the underlying action."*Zurich Insurance Co. v. Raymark Industries, Inc.* 514 N.E.2d 150, 163 (Ill.1987)(emphasis added)."A **declaratory** judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not ripe before adjudication."*Bituminous Casualty Corporation v. Fulkerson,* 571 N.E.2d 256, 260 (Ill.App. 5th Dist.1991). As the Seventh Circuit stated in *Grinnell Mutual Reinsurance Co. v. Reinke,* 43 F.3d 1152 (7th Cir.1995):

A conclusion that the insurer must defend does not imply that it must idemnify; because of the possibility that the legal theory of the underlying suit may change, a conclusion that the insurer need not defend does not imply that it need not indemnify. It need not indemnify on allegations found insufficient to activate a duty to defend, but the theory of recovery is not fixed until the case ends. Under Illinois law it seems unlikely that an alteration in the [plaintiff's] theory would affect [the insurer's] indemnity obligation, but *it would be premature to issue an opinion attempting to resolve disputes that have not crystallized.*

**Id. at 1154 (internal citations omitted)(emphasis added).**

5. The only exception to this rule under Illinois law is where the issues involved in the **declaratory**

judgment action are separable from those in the underlying action. *Bituminous Casualty,* 571 N.E.2d at 260.This exception exists because "where the issues in an underlying suit and a **declaratory** judgment action are separable, deciding the question of coverage in a collateral proceeding prejudices no party."*Murphy v. Urso,* 430 N.E.2d 1079, 1084 (Ill.1981). Such is not the case in the present matter.

**\*4** 6. In the case at bar, the issues regarding coverage are intertwined with the issues in the underlying lawsuit. For instance, as NCMIC pointed out during trial, Bennion alleges that Johnson "physically and sexually touched [her] without her consent."NCMIC further argued that all of the counts of the Bennion Complaint expressly allege that the claim arises out of **sexual** touching and assault. It was from these assertions that NCMIC concluded that Johnson's alleged conduct (1) must have constituted "**sexual** touching,"(2) thus, could not qualify as "**professional** services," and (3) therefore, was not covered by NCMIC's policy.

7. Taking just this argument by NCMIC as an example, it becomes clear why a **declaratory** judgment as to indemnification would be premature and prejudicial at this juncture. If this Court were to declare that NCMIC has no duty to indemnify Johnson, it also effectively would be declaring that Johnson's *actual* actions do not fall within coverage of the policy-which is to say that Johnson's actions were not "**professional** services" because his actions constituted "**sexual** touching." If this Court were to make such a declaration, the doctrine of collateral estoppel would be applicable, and the result of the **declaratory** judgment would be controlling in the underlying suit. *Id.;Wilton v. Seven Falls Co.,* 515 U.S. 277, 288-89 (1995). Consequently, "the order and burden of proof [in the underlying case] would be oriented to and dictated by [this] **declaratory** action and not by the primary litigation," as the burden might then be on defendant Johnson to show that his conduct *did not* constitute "**sexual** touching." *See Murphy,* 430 N.E.2d at 1084.It is not within this Court's province to determine factual issues that are crucial to the under-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 1004862 (S.D.Ill.)

**(Cite as: Not Reported in F.Supp.2d)**

lying suit. "A **declaratory** judgment action should not ... be used to force the parties ... to have a 'dress rehearsal' of an important issue expected to be tried in the [underlying] action."*Bituminous Casualty Corp., 571 N.E.2d at 261.*Accordingly, although this Court will determine whether NCMIC has a duty to *defend* Johnson, it will follow Seventh Circuit guidance in refraining from determining whether NCMIC has a duty to indemnify Johnson. *See, e.g., Reinke, 43 F.3d 1152* **(affirming a district Court's decision to determine the duty to defend issue while refraining from determining the duty to indemnify question);** *Nationwide Insurance v. Board of Trustees of the University of Illinois,* 116 F.3d 1154 (7th Cir.1997)(same).[FN2] The Court therefore **DISMISSES** *without prejudice* NCMIC's cause of action insofar as it seeks a determination of its duty to indemnify. *See Nationwide Insurance v. Zavalis,* 52 F.3d 689, 693 (7th Cir.1995)("as [the insured had not yet been deemed liable when the insurer filed suit], the district court was correct to dismiss without prejudice the **declaratory** judgment action insofar as it sought a determination of the company's duty to indemnify [the insured]").

> FN2. This Court is cognizant of the fact that the Seventh Circuit recently has stated that "a **declaratory** judgment that [an] insurer need not defend means that it need not indemnify either...."*Meridian Security Insurance* Co. v. Sadowski, et. al., No. 05-2855, slip. op. 4 (7th Cir. Mar. 22, 2006). On one hand, this statement appears to be dicta, and not intended to overrule the Seventh Circuit's clear holdings in cases such as *Nationwide Insurance* and *Reinke.*And, in fact, the Court in *Meridian* specifically states "this opinion does not overrule any decision...."*Id.* at 6 n. †. Nonetheless, this Court's abstention from making a declaration regarding NCMIC's duty to indemnify is not inconsistent with the statement in *Meridian.*While the *Meridian* opinion comments upon what a declaration regarding an insurer's duty to defend might "mean," nothing about the

opinion compels this Court to directly answer a question the Seventh Circuit and Illinois Courts have repeatedly declared as unripe at this juncture.

**\*5** 9. Similar considerations restrain this Court from considering Bennion's deposition testimony to determine whether NCMIC has a duty to defend Johnson."Where a **declaratory** judgment action is brought to determine an insurer's duty to defend, the rule in [Illinois] is that the court must look only to the complaint in the underlying action to see if the allegations set forth therein show that the insured's conduct is within or potentially within coverage."*Id.* at 260, citing *Zurich Insurance Co.,* 514 N.E.2d at 163."[I]t is only the allegations in the underlying complaint, considered in the context of the relevant policy provisions, which should determine whether an insurer owes a duty to defend an action brought against an insured."*Bituminous Casualty Corp., 571 N.E.2d at 260,* **citing** *Scudder v. Hanover Ins. Co., 559 N.E.2d 559, 560 (Ill.App. 2nd Dist.1990).*

9. As with the indemnification issue, Illinois law only permits a narrow exception to this general rule; "[a] court may look beyond the allegations in the complaint only if the coverage issue involves such ancillary matters as whether the insured paid the premiums or whether he is the proper insured under the policy."*Bituminous Casualty Corp., 571 N.E.2d at 261,* **citing** *State Farm Fire & Casualty Co. v. Shelton, 531 N.E.2d 913, 919 (Ill.App. 1st Dist.1988).* For the reasons delineated *supra,* this exception is inapplicable to the present matter; here, the coverage issues are too interwoven with the issues in the underlying lawsuit. Accordingly, the Court will not consider extrinsic evidence that might be crucial to the underlying lawsuit-such as Bennion's deposition testimony-in determining if NCMIC has a duty to defend Johnson.

Having set the parameters of its review, the Court now considers the parties' substantive arguments regarding NCMIC's duty to defend.

10. In **insurance** coverage disputes, the insured has

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004862 (S.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

the burden of proving that a claim is within the coverage of the policy, while the **insurance** company has the burden of proving the applicability of policy exclusions or a breach of policy conditions. *St. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co., 496 N.E.2d 1176 (Ill. 1st Dist.1986).* Accordingly, Johnson has the burden of proving that Bennion's claim qualifies as a "medical incident" and "injury," while NCMIC has the burden of proving the applicability of any of the exclusions.

11. As mentioned, a duty to defend exists where the allegations of the complaint, when compared to the terms of the **insurance** policy, fall within, or *potentially within,* the terms of the policy. *Outboard Marine Corp., 607 N.E.2d at 1220.* For the following reasons, this Court finds that a comparison of the allegations in Bennion's Complaint to the terms of NCMIC's policy mandates a finding that NCMIC has no duty to defend Johnson as to Bennion's Complaint.

12. The NCMIC policy applies only to claims arising from a "medical incident," which requires "**professional** services," defined as those practices within the scope of practice of a **chiropractor.** Under Illinois law, for actions to be considered "**professional** services"-that is, to be within the scope of practice, the claim must involve specialized knowledge, labor or skill, predominantly mental or intellectual in nature. *See American Family Mut. Ins. Co. v. Enright, 781 N.E.2d 394 (Ill.App. 2nd Dist.2002); Gould & Ratner v. Vigilant Ins. Co., 782 N.E.2d 749 (Ill.App. 1st Dist.2002).*

**\*6** 13. In this matter, Bennion alleges in all counts of her Complaint that Johnson touched her without her consent-nothing about that allegation involves any application of **professional** knowledge, labor or skill, nor does she at any time allege or contend that (a) Johnson was a medical practitioner, (b) that she was a patient of Johnson, (c) that the conduct alleged was in any way connected with any treatment that she sought from Johnson, or (d) that Johnson breached any **professional** standard of care.

14. Moreover, all counts of Bennion's Complaint allege non-consensual touching. This qualifies as "battery," regardless of the attempted allegations of negligence. Under Illinois law, an "accident" must be an unforeseen occurrence, and does not include the natural and ordinary consequences of an act. *See, e.g., Aetna Cas. & Sur. Co. v. Freyer, 411 N.E.2d 1157, 1159 (Ill.App. 1st Dist.1980)(* **"injury caused by an assault and battery is normally not considered to be accidental").**

15. The NCMIC policy applies only to "an *accident* [emphasis added] arising from a medical incident." This Court finds that the conduct Bennion alleges in her Complaint does not qualify as "accidental."

16. Furthermore, NCMIC's policy does not apply to emotional distress. Illinois courts that have interpreted "bodily injury" have concluded that it does *not* include claims for emotional distress. *See University of Illinois v. Continental Casualty Co., 599 N.E.2d 1338 (1992); Commercial Union Ins. Co. v. Image Control Property Management, Inc., 918 F.Supp. 1165 (N.D.Ill.1996)* . These courts have construed the standard definition of "bodily injury" in Comprehensive General Liability (CGL) policies: "Bodily injury means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." As noted in these cases, this requires an "actual physical" injury, as opposed to emotional distress or mental anguish. *Commercial Union, 918 F.Supp. at 1170-1171.* The NCMIC policy contains a substantially identical definition of "injury": "Injury means bodily injury, sickness, disease or death sustained by any one person." Accordingly, the same rule applies-for there to be a duty to defend, the Bennion Complaint must allege actual physical injury.

17. The Bennion Complaint does not allege actual physical injury. Although Bennion's allegation that Johnson caused her to "sustain serious personal and emotional injuries ... in both mind and body ..." arguably is vague on this point, the Complaint as a whole make it clear that Bennion is not alleging that she was physically injured by Johnson's **sexual**

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004862 (S.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

"touching."

18. For the foregoing reasons, the Court **FINDS** the allegations of the complaint, when compared to the terms of the **insurance** policy, do not fall within, or potentially within, the terms of NCMIC's policy. *Outboard Marine Corp.,* **607 N.E.2d at 1220.**Accordingly, NCMIC has no duty to defend Johnson as to Bennion's Complaint.

### D. *Conclusion*

**\*7** Having carefully reviewed the evidence presented by both parties, the Court **FINDS** in favor of NCMIC, but *only* in regards to NCMIC's duty to **defend** Johnson. This Court **DECLARES** that NCMIC has no duty to defend Timothy Johnson as to Bennion's Madison County complaint (Circuit Court of the Third Judicial Circuit, Madison County, Illinois, # 03-L2035). The Court **DIS-MISSES** *without prejudice* NCMIC's cause of action insofar as it seeks a determination of NCMIC's duty to indemnify.

IT IS SO ORDERED.

S.D.Ill.,2006.
NCMIC Ins. Co. v. Johnson
Not Reported in F.Supp.2d, 2006 WL 1004862 (S.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.